BARTOLOMÉ AND ANTONIO PASTOR-GOMILA, Plaintiffs and Appellees, *v.* JOSÉ MIRÓ-PASTOR, Defendant and Appellant.

No. 3113. Argued February 26, 1924.—Decided March 30, 1925.

1. DOMICILE—EVIDENCE.—A native of Spain resided for 25 years in Porto Rico where he amassed quite a fortune. In August of 1917 he visited his native country with the intention to return in order to settle his affairs here and then go back to Spain and spend the balance of his life there. When he left for the visit all of his property was here, including a considerable amount of money in the banks. He died in his native town three months after his arrival. *Held:* That the deceased had not lost his domicile in Porto Rico and acquired one in Spain, although in a letter dated May, 1917, he said: "I desire to take along with me what little I have in order to enjoy the few years remaining to me in living with you."

2. WILL—HOLOGRAPHIC WILL—DECREE OF FOREIGN COURT.—The decree of a Spanish court holding certain letters of a person who died in Spain to be his holographic will can produce no effect in Porto Rico as regards real property situated here.

3. ID.—ID.—Casual remarks contained in a long business and personal letter and not showing the deliberate intention of the writer to arrange for the disposal of his property after his death, have not the character of a holographic will.

District Court of Ponce, R. Díaz Cintrón, J. Judgment for the plaintiff in an action under section 702 of the Civil Code. *Affirmed.*

*López de Tord & Zayas Pizarro* for the appellees. *Yordán & Yordán* for the appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

Amador Pastor y Pastor, a native of Sóller, Balearic Islands, Spain, and a Spanish subject, lived for many years in the ward of Tanamá of the Municipality of Adjuntas, Porto Rico, and on March 23, 1909, made an open will before notary Francisco Descartes of Ponce wherein he declared that he was a resident of Adjuntas, unmarried and without descendants or ascendants and named as his sole heir his first cousin and godchild, Bartolomé Pastor y Gomila.

In August of 1917 Amador Pastor y Pastor went from Porto Rico to Spain and died three months later in the city of Palma de Mallorca, Balearic Islands, Spain. In June of the following year the heir designated in the said open will accepted the inheritance and took possession of the estate left by the deceased, consisting of a large number of properties situated in this Island, most of them in Adjuntas, and some cash on deposit in different banks.

In January of 1919 José Miró y Pastor brought proceedings in a Spanish court, alleging that Amador Pastor y Pastor, a native of Sóller, who was always a Spanish subject, had died in Spain; that he had definitely returned to his country and settled in his native town; that his last will is contained in his letter of July 17, 1909, addressed to José Miró Arbona, wherein he named the petitioner as his sole heir, and that this was ratified by other letters of May 27, 1910, and May 14, 1914. He prayed the court to adjudge that these letters were the will of the deceased. The

petition was granted by the Court of First Instance of La Lonja, Palma, Balearic Islands, Spain, which held that the said letters were a sufficient will for the purpose of protocolization, without prejudice to third persons, and the said documents were protocoled in the office of a notary of that city.

Thereafter Bartolomé Pastor y Gomila, the heir under the will made in March, 1909, before notary Francisco Descartes, brought an action under section 702 of the Civil Code against José Miró y Pastor in the District Court of Ponce, within whose territorial jurisdiction is the town of Adjuntas, and prayed for judgment declaring that the letters written by Amador Pastor y Pastor to José Miró Arbona, the father of defendant José Miró Pastor, do not constitute his holographic will and that their protocolization in a notarial office in Palma, Spain, can produce no effect in Porto Rico nor prejudice the rights of the plaintiff as sole heir designated in a will made before a notary. In support of his prayer he alleged furthermore that Amador Pastor y Pastor was temporarily in Spain when he died; that it was never his intention to name José Miró as his heir and made no will to that effect; that José Miró Pastor has appointed an attorney in fact in this Island through whom he has attempted to take possession of the estate and to perform acts of ownership as sole heir under the so-called holographic will, and that notwithstanding the fact that the said letters were written in a ward of Adjuntas, where the properties are situated and of which Amador Pastor y Pastor was a resident, the defendant has not presented the said letters to the District Court of Ponce, the only court with jurisdiction to order that they be protocoled.

The defendant alleged in his answer that Amador Pastor y Pastor went to Spain with the intention of residing permanently in his native country, where he died; that he left no open will, but left testamentary letters, and that

the Spanish court to which these letters were presented, it being the only jurisdictional court, held that they were the last will of Amador Pastor y Pastor. As special defense he alleged that the will made by Amador Pastor y Pastor on March 23, 1909, before notary Descartes is void, because one of the witnesses, Antonio Catinchi y Consalví, was at that time a partner of the said notary in rendering legal and notarial services, with an interest in the fees paid for preparing the said will, and because another witness, Eladio Ayala, occasionally acted as clerk for the said notary and at that time had his office in the same place where the notary had his office. As a counter-claim he prayed the court to order that José Miró y Pastor be put in possession of the entire estate of Amador Pastor y Pastor; that the counter-defendant pay him $102,672.73 as profits from the properties of the estate, and to adjudge that, in so far as it may prejudice the counter-plaintiff, the mortgage created on April 11, 1919, by the counter-defendant in favor of his brother on 58 properties of the estate to secure the payment of a loan of $35,000 is null and void.

The brothers Bartolomé and Antonio Pastor Gomila opposed the counter-complaint and after trial judgment was rendered dismissing the counter-complaint in all particulars and adjudging that the letters signed by Amador Pastor y Pastor and addressed to José Miró Arbona do not constitute a holographic will and their protocolization in Palma, Spain, on March 12, 1919, before notary José Socias y Gradolí, can have no legal effect in Porto Rico nor prejudice the rights of the plaintiff and counter-defendant Bartolomé Pastor Gomila, who was declared to be the sole heir of Amador Pastor y Pastor by virtue of the open will made by him, the validity of which was sustained and ratified. The costs were imposed upon the defendant and counter-plaintiff.

From that judgment the defendant took the present ap-

peal, assigning in this court such errors as in his opinion were committed by the lower court and praying that the judgment be reversed and substituted by a judgment dismissing the complaint and sustaining the counter-complaint.

The letter that was protocoled in Spain as the holographic will of Amador Pastor y Pastor was written by him in Porto Rico on July 17, 1909, or three months and some days after he had made his will before a notary. It is a long letter about business and personal matters and the paragraph of it which is said to be a holographic will appears in the transcript of the record literally as follows:

" *   *   *   My will is made when I die let it go to Pepito because I do not wish all of my sisters to treat you as they treated me when my parents died."

The other two letters that also were protocoled and are supposed to ratify the first are of the same nature and read literally as follows:

" *   *   *   when I die José will have to come here to take possession of all this will surely be valuable we may not see it but Pepito will see it the valley lands are worth a fortune   *   *   *."
" *   *   *   brother-in-law I have always told you that whenever you need anything I have it you may dispose of everything that I have for I work so that when I die it is for you I will take nothing with me so if I have two years more to live I wish to live them with you for I have worked hard in this world   *   *   *."

Article 4 of Chapter I, Title III, Book III of our Civil Code treats of holographic wills and its section 698 provides that holographic wills shall be placed in a protocol, being presented for this purpose to the district court of the last domicile of the testator, or the court of the district in which the said testator dies, if his death occurred in Porto Rico. Section 700 determines what the district court must do after the holographic will has been presented and the death of the testator established. Section 701 provides that for carrying out the said proceedings, the surviving spouse,

if there be one, the descendants and the ascendants of the testator shall be summoned, and in the absence thereof his brothers and sisters, and that the persons named may be present at the time such proceedings are carried out and may make, verbally, such observations as they may deem proper with regard to the authenticity of the will. Section 702 prescribes what the court shall do if it considers that the identity of the will has been proved, the last paragraph providing that whatever the decision of the district court may be, it shall be carried out, notwithstanding objection, but the rights of persons interested to enforce such rights in the proper suit shall be reserved.

The last provision of section 702 is the basis on which the plaintiff brought the present action.

[1] In accordance with section 698, *supra,* the letters said to contain the holographic will of Amador Pastor y Pastor should have been protocoled in this Island after having been presented in the District Court of Ponce, within whose jurisdiction is the town of Adjuntas, because one of its wards called Tanamá was the last domicile of the testator, for although the appellant alleges that the last domicile of the testator was in the Balearic Islands, Spain, because Amador Pastor y Pastor went there with the intention of retiring from Porto Rico and remaining in Sóller, his native town, and therefore acquired a domicile there, yet the evidence of the appellee shows that he made his last trip to Spain because of ill health and with the intention and purpose of returning to this Island, and the evidence introduced by the appellant is not sufficient to show the contrary, for the following words contained in his letter of May 17, 1917, written on this Island and addressed to the appellant's parents are not sufficient to establish his purpose to remove to Spain and reside there permanently:

" * * * I had intended to sail on the next regular mail-ship but have not done so because the rate of exchange is quite forbid-

ding and when I sail I desire to take with me what little I have in order to enjoy the balance of my life with you my passport is ready I will not go until the exchange is at par I am having some bad luck   *   *   * ''

And although it is true that in August of that year he went to Spain, where he died a few months later, the facts do not show that he made that trip for the purpose of establishing his permanent residence there, for he did not take with him ''what little he had here,'' as stated in his letter, but left in this Island all of his properties and even a considerable amount of money that he had in the banks. We have read the opinion of the United States Circuit Court of Appeals for the First Circuit of December 22, 1924, in the case of *Porto Rico Railway, Light & Power Co.* v. *Cognet et al.,* 3 F. (2d) 21, upholding the finding of the jury that the plaintiffs did not acquire a domicile in this Island for the reason that although there was much in the testimony that seemed inconsistent with that finding, the court could not say that there was no evidence to support it. In the present case not only did the court below, where there is no trial by jury in civil cases, hold that when Amador Pastor y Pastor died his domicile was in the town of Adjuntas, but a preponderance of the evidence supports that conclusion, for it not only so appears from his notarial will, but also particularly from the testimony of the only witness called by the defendant, who said that when Amador Pastor y Pastor sailed for Spain in 1918 he had the intention of returning to this Island to arrange his affairs and then going back to Spain to reside permanently, for which reason when he died a few months later his domicile was in Porto Rico, where he had lived for 25 years, whatever he may have contemplated for the future.

[2] But even supposing that he went to Spain to reside there permanently during the balance of his life and that for this reason his last domicile was in Spain, still the de-

cision of the Court of First Instance of Palma declaring the said letters to be the holographic will of Amador Pastor y Pastor and ordering that they be protocoled in a notarial office in that city can produce no effect in this Island where the real property is situated, because, as held by this court in the case of *Colón* v. *Registrar,* 22 P.R.R. 344, the adoption and application of the rule of *lex rei sitae* as held by the American courts to include and govern the capacity of the parties does no violence either to the letter or to the spirit of our Civil Code or to any of its fundamental principles and establishes once for all a single, fixed and rational rule conducive to the avoidance of inconsistencies and confusion in our decisions referring to real and personal statutes and the effect of foreign laws; and applying the said doctrine in that case we held that a Spanish tutor of minors residing in Spain, authorized by the family council, as required by the Spanish Civil Code, to execute the cancellation of a mortgage upon real estate situated in Porto Rico, needed for that purpose authorization of the district court within whose jurisdiction the property was situated.

[3] On the other hand, the words contained in the letter which the appellant claims to be a holographic will and in the letters of alleged ratification, have not the character of a will, because, being casual remarks contained in long business and personal letters, they do not show the deliberate intention of the writer to arrange for the disposal of his property after his death, which is an essential requisite in wills. This case is distinguished from the case decided by the Supreme Court of Spain on June 8, 1918, by the fact that in that case the intention to make a will appeared clearly from the following: "Peñafiel, October 24, 1915. My beloved Pasicos: In this, my first love letter, I make my will. Everything is for you, that you may always love me and never doubt the love of your Matilde." The intention

is disclosed not only by the use of the word "will," although that was not absolutely necessary, but from the entire context which shows the clear and manifest intention of the writer to dispose of her property in case of her death, a requisite which we have been unable to find in the letter of July 17, 1919. As the appellee says in his brief, "it is really remarkable that it is attempted to maintain that a man who says that he has already made his will and has his affairs settled, means by those same words to say that he is then and there making his will."

Having reached the foregoing conclusions, that is, that the last domicile of Amador Pastor y Pastor was in the ward of Tanamá, Adjuntas, Porto Rico; that for this reason the letter said to contain his will should have been submitted to the District Court of Ponce to be protocoled; that the proceedings to protocol it in a Spanish court have no validity in this Island where his real property is situated, and that, in any event, the said letter contains no will, it becomes unnecessary to decide the other questions raised by the appellant in his counter-complaint for the reason that as he is not an heir of Amador Pastor y Pastor he has no right to attack the notarial will made by the said Pastor, or the mortgage created by the counter-defendant on properties inherited by him from Amador Pastor y Pastor, a mortgage that is already canceled.

The judgment appealed from must be affirmed.